The People of the State of New York ex rel. E. Devillo Root, as Supervisor of the Town of Addison, Respondent, v. The Board of Supervisors of the County of Steuben, Appellant.

The People of the State of New York ex rel. Marcus Stowell, as Supervisor of the Town of Lindley, Respondent, v. The Board of Supervisors of the County of Steuben, Appellant.

*County contribution towards town bridges — section* 130 *of chapter* 568 *of the Laws of* 1890 *construed.*

The true meaning of section 130 of chapter 568 of the Laws of 1890 requires a county to contribute to a town within its territory one-third part of the expense incurred in any one year of constructing, caring for, maintaining, preserving and repairing its bridges in excess of one-sixth of one per centum of the assessed valuation of such town for that year, when such expenses are incurred upon the town's free bridges within its boundaries, as well as upon those upon the boundaries.

The phrase "except as otherwise herein provided" in such section applies to all three of the classes therein mentioned.

Appeal by the defendant, The Board of Supervisors of the County of Steuben, from two orders of the Supreme Court, made at the Monroe Special Term and entered respectively in the office of the clerk of the county of Steuben on the 19th day of December, 1893, directing that a writ of peremptory mandamus issue directed to the said Board of Supervisors, requiring them to levy upon the taxable property of the county of Steuben a sum sufficient to pay its proportion of the expenses of constructing and maintaining certain free public bridges in the towns of Addison and Lindley, Steuben county, N. Y., with notice of an intention to bring up for review upon such appeal all the provisions of the said orders.

*M. Rumsey Miller*, for the appellant.

*J. F. Parkhurst*, for the respondents.

Lewis, J.:

The highway commissioner of the town of Addison, county of Steuben, during the year preceding the 1st day of November, 1893, incurred, in the construction, care, maintenance and repair of the free public bridges within said town, expenses amounting to the sum of $7,114.62.

The assessed valuation of the taxable property of said town for that year was $956,177. The excess of the expenses to which said town was thus subjected exceeded one-sixth of one per centum of said assessed valuation of its taxable property by the sum of $5,521. A verified itemized statement of said expense was made by the commissioner of highways of said town showing that he had expended for a new iron bridge across the Canisteo river in the village of Addison, $6,265, and for repairs of various other bridges within the boundaries of the town, sums of money aggregating in all, including the cost of the Addison bridge, said sum of $7,114.62. An explanatory statement was at the same time presented to the said board in words and figures following :

| | |
|---|---:|
| " Assessed valuation .......................... | $956,177 00 |
| One-sixth of one per cent of valuation............ | 1,593 62 |
| Total expenses of bridges during the present year... | 7,114 62 |
| Excess of cost of bridges over one-sixth of one per cent of total valuation........................ | 5,521 00 |
| One-third of excess............................ | 1,840 03 |
| Steuben county debtor to town of Addison........ | 1,840 03 " |

These statements were presented to said board with a request that they pay said town the said sum of $1,840.03. The board acted upon the claim and wholly disallowed the same, upon the ground that it was not a legal charge or claim against the county. These facts being made to appear to the court at Special Term, a peremptory writ of mandamus was directed to issue to said board requiring them to forthwith convene and to levy upon the taxable property of the county of Steuben a sum sufficient to pay its proportion of the expenses of the town aforesaid for the year ending November 16, 1893, to wit, the sum of $1,840.03, and that the same when collected should be paid toward the payment of such expenses ; and from the order thus granted an appeal was taken to this court.

The relator's claim against the county is based upon the provisions of section 130, chapter 568 of the Laws of 1890.

The appellant's contention is that this section has no application, for the reason that the expenses were incurred for bridges over streams or other waters within the boundary lines of the town and

which did not form the boundaries of the town. This is the principal question presented by this appeal, and it involves the construction of said section, which is as follows:

" *When town or county expense.* The towns of this State, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public 'free bridges constructed over streams or other waters within their bounds, and their just and equitable share of such expenses when so constructed over streams or other waters upon their boundaries, except between the counties· of Westchester and New York; and when such bridges are constructed over streams or other waters forming the boundary line of' towns either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses, except that when the whole· expense in any one town, for any one year, for the construction, care, maintenance, preservation and repair of its bridges, shall exceed one-sixth of one per centum on the assessed valuation of the taxable property of the town for that year; the county in which such town is located shall then pay not less than one-third part of such excess. Each of the counties of this State shall also be liable to pay for the construction, care, maintenance, preservation and repair of public bridges lawfully constructed over streams or other waters· forming its boundary lines, not less than one-sixth part of the expenses of such construction, care, maintenance, preservation and repair."

Section 131 of said act is as follows:

" *Additional county aid.* When it shall appear to the board of' supervisors of any county that any one of the towns in their county will be unreasonably burdened by erecting or repairing any necessary free bridges in such town or upon its borders, such board of supervisors may cause such sum of money, not exceeding $2,000 in any one year, in addition to the amounts provided for in the last preceding section, to be raised and levied upon the county to be used to pay such portion of the expenses of erecting or repairing· such bridge as such board may deem proper."

This latter section was repealed by chapter 686 of the Laws of 1892, known as the County Law; and section 63 of the latter act was substituted for the repealed section. Section 63 is as follows :

" *County aid to towns for the construction and repair of bridges.* If the board of supervisors of any county shall deem any town in.

the county to be unreasonably burdened by its expenses for the construction and repair of its bridges, the board may cause a sum of money, not exceeding $2,000 in any one year, to be raised by the county and paid to such town to aid in defraying such expenses."

We are of the opinion that the true meaning of the section requires a county to contribute to the town the one-third part of the excess mentioned when the expenses are incurred upon the town's free bridges within its boundaries as well as those upon the boundaries. This is the natural and reasonable construction of the language of the section. The section says : "The towns of this State, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public free bridges constructed over streams or other waters within their bounds," and then follow the provisions as to the construction of bridges over streams forming the boundaries, "except that when the whole expense in any one town for any one year * * * shall exceed one-sixth of one per cent," etc. The phrase "except as otherwise herein provided" manifestly applies to all three of the classes mentioned. Had it been the intention of the Legislature that it should apply only to the second and third classes it would have been incorporated into that part of the section, and not have appeared in the part of the section relating to the first class. The section refers to the bridges of the town generally, including those within as well as those upon its boundaries. There would seem to be no good reason for providing for assisting a town in the construction of bridges upon its boundaries and not for those within its lines. When building a bridge upon a boundary line between two towns the expense thereof is borne equally by the towns. A review of the legislation of the State upon this subject may aid in construing this section. At an early day, under the common law of England, the duty of repairing bridges in that country devolved upon the counties, they being regarded as for the common good and convenience of the residents of the entire county. In this State as early as 1784, chapter 52 (1 Greenl. Laws, 105), the construction and reparation of bridges was committed to town officers. It seems to have very soon become apparent to the Legislature that requiring the towns to bear the entire expense of constructing its bridges imposed in some instances an undue burden, and as early as 1801 an act was passed giving to

the boards of supervisors the power of assisting the towns when it was made to appear that the town was unreasonably burdened by the erection or repair of its bridges. It undoubtedly came to be known that it was difficult to obtain relief under this law, for the reason that members of boards of supervisors were, as a rule, reluctant to impose upon the taxpayers of the towns which they immediately represented the burden of assisting other towns in the construction of their bridges, and an act was accordingly passed giving to the Court of Sessions the power to review the decision of the board of supervisors in such cases.

By subdivision 4 of section 1 of chapter 482 of the Laws of 1875 counties were made absolutely liable to pay not less than one-sixth of the expenses of constructing public bridges over streams or other waters forming the boundary line of counties between the towns at such point, and if the board of supervisors deemed the bridge of general benefit to the county, and that the payment of two-thirds of the expense by the towns would be unjust to them, they were authorized to give additional assistance. This rule was continued in chapter 346 of the Laws of 1883 and chapter 126 of the Laws of 1886, and then came the Highway Law of 1890 containing the section above quoted.

It will be observed that the legislation down to the time of the passage of the act of 1890 had tended towards a more liberal treatment of the towns which might be thus overburdened. As the country was cleared up and became more thickly populated a more general system of bridging streams and ravines was called for by the necessities of the people. The cultivation of the land and the construction of ditches and sewers increased the volume and number of freshets, and very frequent destruction of bridges, and thereby increased the expense to the towns of maintaining them, and hence came from time to time the legislation looking to their relief. The Legislature very properly provided for compelling the boards of supervisors to pay a definite and fixed percentage of the expenses of the towns in the construction and repair of their bridges, especially in view of the well-known fact that the bridges of the county are used indiscriminately by the residents of the county.

The account prepared and presented by the commissioners was in conformity with the requirements of section 132 of the act of 1890.

It was a verified statement containing a description of the bridge and the whole expense in items incurred by the town during the year preceding for constructing and repairing bridges. The claim was not rejected by the supervisors because of any informality in the account. The claim of the defendant's counsel is that the county was not liable in any event for any portion of the expense incurred.

As there was no apparent reason why the claim should have been rejected, a writ of peremptory mandamus was properly granted, and the order appealed from should be affirmed, with costs.

The same disposition should be made of the case of *The People ex rel. Marcus Stowell, Supervisor, etc.,* v. *The same defendant,* as the material facts and questions involved are the same in both cases.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

The order in each case appealed from affirmed, with costs.